**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **INGRID HJERSTED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIVIL ACTION** |
| | ) | |
| **LAWRENCE HJERSTED and WILLIAM FLEMING,** | ) | **No. 08-2419-KHV** |
| | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM AND ORDER**

Ingrid Hjersted brings this diversity suit against Lawrence Hjersted and William Fleming. Under Kansas law, plaintiff asserts claims for breach of a settlement agreement, breach of fiduciary duties, breach of contract and fraud. This matter comes before the Court on Defendants' Joint Motion to Dismiss (Doc. #16) filed February 27, 2009. Defendants seek to dismiss the case pursuant to Rule 12(b)(7), Fed. R. Civ. P. for failure to join necessary and indispensable parties under Rule 19, Fed. R. Civ. P. In particular, defendants assert that plaintiff did not join the other beneficiaries and the trust and estate on which her claims rely, and that joinder of these absent parties would destroy diversity jurisdiction. For reasons stated below, the Court sustains defendants' motion.

**Legal Standards**

Under Rule 12(b)(7), Fed. R. Civ. P., the Court may dismiss a case for failure to join a necessary and indispensable party under Rule 19. The Court exercises discretion in deciding a Rule 12(b)(7) motion. Citizen Band Potawatomi Indian Tribe of Okla. v. Collier, 17 F.3d 1292, 1293(10th Cir. 1994) (citing Navajo Tribe of Indians v. New Mexico, 809 F.2d 1455, 1471 (10th Cir. 1987)). Defendants bear the burden to produce evidence which shows the nature of the interest possessed by an absent party and

that such party's absence will impair the protection of that interest. See Citizen Band, 17 F.3d at 1293. Defendants can satisfy this burden with affidavits of persons having knowledge of the interest as well as other relevant extra-pleading evidence. See id.

In deciding whether a person is indispensable under Rule 19(b), the Court applies a three-part analysis. See Citizen Potawatomi Nation v. Norton, 248 F.3d 993, 997 (10th Cir. 2001). First, the Court determines under Rule 19(a) whether the party is a required or necessary party. A party is required if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). If a person is required, the Court must determine whether joinder is feasible, i.e. whether the person is subject to service of process and whether joinder will deprive the Court of subject matter jurisdiction. Citizen Potawatomi Nation, 248 F.3d at 997. If the party is necessary but cannot be joined, the Court determines under Rule 19(b) whether the party is indispensable. To conclude that a party is indispensable, the Court must find "in equity and good conscience" that the action should not proceed in the party's absence. Fed. R. Civ. P. 19(b); Sac & Fox Nation of Mo. v. Norton, 240 F.3d 1250, 1259 (10th Cir. 2001). In making this determination, the Court balances the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;

> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). The Court exercises discretion in determining the weight of each factor. Thunder Basin Coal Co. v. Sw. Pub. Serv. Co., 104 F.3d 1205, 1211 (10th Cir. 1997).

**Factual Background**

The following facts are set out in plaintiff's complaint and the parties' affidavits.

Norman Hjersted had three children: plaintiff, a resident of Massachusetts, and Lawrence Hjersted and Karen Marker, both residents of Florida. On May 18, 2000, Norman Hjersted executed a trust agreement which established a revocable trust ("Norman's Trust"). Norman's Trust provided that it would become irrevocable upon his death. Norman's Trust named as beneficiaries the Ingrid Hjersted Trust ("Ingrid's Trust"), Lawrence Hjersted and Karen Marker. Plaintiff is the sole beneficiary of Ingrid's Trust. Lawrence Hjersted has renounced his interest in Norman's Trust in favor of his son, Jared Hjersted. Jared Hjersted is a citizen of Florida and currently lives in Maryland. Lawrence Hjersted serves as the trustee of Ingrid's Trust and Norman's Trust. Lawrence Hjersted is also the general partner of the Hjersted Family Limited Partnership ("Family Partnership") in which Ingrid's Trust was a partner for a time. In addition, Lawrence Hjersted is president of a business called Agro-Iron.

On April 28, 2001, Norman Hjersted died. On November 19, 2001, the District Court of Leavenworth County, Kansas admitted his will to probate.[1] Norman's Trust is the beneficiary of Norman Hjersted's residuary estate. Lawrence Hjersted is the executor of Norman Hjersted's estate,

[1] The record does not include a copy of Norman's Trust, Ingrid's Trust or Norman's Will.

which remains open.[2]

William Fleming, a Kansas attorney, drafted Norman's Trust, Norman's Will and the Family Partnership agreement. Fleming has represented Lawrence Hjersted individually and in his capacities as executor of Norman's Estate and trustee of Ingrid's Trust and Norman's Trust. Fleming also serves as attorney for Ingrid's Trust, Norman's Trust and the Family Partnership and has acted as general counsel for Agro-Iron.

After Norman Hjersted died, plaintiff and Lawrence Hjersted began to disagree on Lawrence's handling of Ingrid's Trust, Norman's Trust, the Family Partnership and related matters. In January of 2008, they met with their attorneys and made settlement proposals but did not reach an agreement. After a series of offers and counteroffers, on May 12, 2008, plaintiff's attorney sent Fleming a letter stating that she accepted Lawrence Hjersted's settlement offer to (1) pay her $1,000,000 cash by July 1, 2008; (2) immediately pay $25,000 to Ingrid's Trust as reimbursement for attorneys' fees; (3) by July 1, 2008, provide her a $100,000 loan;[3] (4) guarantee that she would receive at least a $350,000 payment in the final settlement of Norman's Estate and Trust; (5) provide "trust accountings for the year 2007" and (6) assure her that "none of the other beneficiaries to date has received any amounts other than their beneficial shares of the Norman Hjersted Trust (other than loans which will be repaid upon final settlement of the estate)." In exchange, plaintiff would release Lawrence Hjersted from all liability in his individual capacity, as executor of Norman's Estate, as trustee of Norman's Trust and Ingrid's Trust

---

[2] Norman Hjersted's surviving spouse, Maryam Hjersted, has litigated her spousal elective share of Norman's Estate. Maryam Hjersted is the stepmother of Ingrid Hjersted, Lawrence Hjersted and Karen Marker.

[3] The letter stated that Lawrence Hjersted would loan plaintiff $100,000 by July 1, 2008 with no interest until settlement of Norman's Estate and Norman's Trust and then with interest for five years at the lowest government rate.

and as managing partner of the Family Partnership. See May 12, 2008 Letter, attached as Exhibit C to Complaint (Doc. # 1).[4]

As trustee of Norman's Trust, Lawrence Hjersted did not distribute $250,000 to Ingrid's Trust before distributing the remainder of the trust estate as required by the terms of Norman's Trust. Fleming did not monitor Lawrence Hjersted's actions as trustee of Norman's Trust and did not disclose to plaintiff conflicts between his representation of Lawrence Hjersted and his representation of Norman's Trust, Norman's Estate and Ingrid's Trust.

As executor of Norman's Estate, Lawrence Hjersted abandoned the Estate's interest in Agro-Iron stock and transferred the stock to himself. Lawrence Hjersted told plaintiff that Agro-Iron was not profitable even though it had substantial value. He also used assets of Norman's Estate to fight tax rulings to benefit his personal tax position. Fleming did not adequately advise Lawrence Hjersted concerning disposition of the Agro-Iron stock.

On many occasions, Norman Hjersted promised plaintiff that because he had given unspecified business interests to Lawrence Hjersted, Lawrence Hjersted would purchase a house for plaintiff in

---

[4] The letter concluded as follows:

> We would like to get the settlement documents drafted and signed within a week. . . . I will provide the first draft of the agreement for your review if you would like me to do so.

Id. In response, Fleming sent plaintiff's counsel an email which stated in relevant part as follows:

> I will pass this on to Lawrence. I am sure everyone looks forward to finally getting these matters resolved. By the way, we have a mediation scheduled with Maryam that is coming up in June. I anticipate that we will invite Ingrid and/or you to attend if you want to. I am not overly optimistic that it will result in any positive progress, but you never can tell.

Fleming email, May 13, 2008, attached as Ex. D to Complaint (Doc. # 1).

Boston. Lawrence Hjersted confirmed this agreement to plaintiff, promised to purchase a house for her and on several occasions agreed to purchase a house for her at prices up to $1,400,000. Each time, however, he gave excuses why he could not do so at that time. In January of 2006, Lawrence Hjersted stated that he would not purchase a house for plaintiff.

During the spring of 2000, on Fleming's advice, Norman Hjersted transferred to Lawrence Hjersted most of his interest in the Family Partnership. At that time, Fleming and Lawrence Hjersted knew that Kemira, an international company with a minority interest in Kemiron, wanted to purchase Kemiron shares from the Family Partnership. In 2003, Lawrence Hjersted distributed to Ingrid's Trust a one-third interest in the Family Partnership, then purchased the shares of Family Partnership held in her Trust. Shortly thereafter, Lawrence Hjersted sold all of the Family Partnership interest in Kemiron stock to Kemira. As result of these transactions, Lawrence Hjersted received $9,800,000 and the beneficiaries of the Estate received considerably less than their share of Norman's Estate.

In Count I, plaintiff alleges that Lawrence Hjersted breached his agreement to (1) give her $1,000,000 in cash, (2) reimburse her $25,000 for legal fees to Ingrid's Trust, (3) loan her $100,000 and (4) guarantee that she would receive at least $350,000 in the final settlement of Norman's Estate in exchange for her release of all claims against him for "all liabilities, individually and in his positions as Executor, Trustee and managing general partner." Plaintiff seeks $1,000,000 in cash, payment of $25,000 to Ingrid's Trust for legal fees, a $100,000 loan and enforcement of Lawrence Hjersted's guarantee that she would receive at least an additional $350,000 in the final settlement of Norman's Estate.

In Count II, plaintiff alleges that Lawrence Hjersted and Fleming breached fiduciary duties and were negligent with regard to Ingrid's Trust. Plaintiff alleges that Lawrence Hjersted breached fiduciary duties with respect to the administration of Ingrid's Trust by selling to Kemira some 3,820 shares of

Kemiron stock – an asset of the Family Partnership and of the Norman Hjersted Trust – to benefit Lawrence Hjersted. She seeks an accounting of Ingrid's Trust and damages in excess of $75,000.

In Count III, plaintiff alleges that Lawrence Hjersted and Fleming breached fiduciary duties regarding Norman's Trust. Plaintiff alleges that Lawrence Hjersted made personal loans to himself from Norman's Trust to protect his personal assets. She further alleges that as trustee of Norman's Trust, he violated a fiduciary duty to distribute $250,000 to Ingrid's Trust before he distributed the proceeds of Norman's Trust to the three beneficiaries and that he failed to provide regular accountings regarding Norman's Trust. She also alleges that Fleming as the attorney for Norman's Trust failed to monitor Lawrence Hjersted's actions. She seeks an accounting of Ingrid's Trust and damages in excess of $75,000.

In Count IV, plaintiff alleges that Lawrence Hjersted as Executor of Norman's Estate and Fleming as attorney for the Estate breached fiduciary duties and were negligent with regard to the Estate. Specifically, plaintiff alleges that Lawrence Hjersted abandoned Agro-Iron stock, an asset of the Estate, and used the asset for his own benefit rather than preserving the value of the asset for the Estate. Plaintiff further alleges that Lawrence Hjersted used Estate assets to fight tax rulings which primarily benefitted his own tax position. She claims that as a beneficiary of the Estate, she has suffered more than $75,000 in damages.

In Count V, plaintiff alleges that Lawrence Hjersted breached fiduciary duties to Norman's Trust and Norman's Estate when he caused the Estate to relinquish ownership of valuable Agro-Iron stock and took the value of the company for himself. She asks the Court to order Lawrence Hjersted to return one-third of the value of Agro-Iron to Ingrid's Trust, which she alleges exceeds $75,000.

In Count VI, plaintiff alleges that Lawrence Hjersted breached his agreement with his father and his promise to her to buy her a house. She seeks $1,400,000 in damages.

In Count VII, plaintiff alleges that Lawrence Hjersted fraudulently caused Norman Hjersted to transfer assets to the detriment of Norman's Estate and Norman's Trust. Plaintiff claims that Lawrence Hjersted caused Norman Hjersted to allow Fleming to revise his estate planning documents. She alleges that Lawrence Hjersted engaged in self-dealing with regard to Norman's Estate, the Family Partnership, Midland and Kemira. She claims that as a result, the beneficiaries of Norman's Trust and Norman's Estate have received less than their pro rata share of the estate. She seeks damages in excess of $75,000.

Defendants seek to dismiss this action because plaintiff has not joined Ingrid's Trust, Norman's Trust, Norman's Estate and the other beneficiaries and legatees of Norman's Trust and Norman's Estate (Karen Marker and Jared Hjersted). Defendants assert that the absentees are indispensable parties and that joinder would destroy diversity jurisdiction. Plaintiff responds that she seeks to recover damages from defendants individually and not from the estate or trusts. She asserts this Court can adjudicate each count of the complaint without implicating the interests of any nonparty.

## **Analysis**

I. Necessity of Parties

As discussed above, the Court does not decide whether the absentees are indispensable parties under Rule 19(b) unless it finds that they are required or necessary parties under Rule 19(a). A party is necessary if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
> > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > (ii) leave a existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the interest.

Fed. R. Civ. P. 19(a)(1). Defendants contend that the absent parties are necessary under each prong of the Rule 19(a) analysis.

Defendants assert that without Karen Marker, Jared Hjersted, Norman's Estate, Norman's Trust and Ingrid's Trust, the Court cannot accord complete relief among existing parties. See Rule 19(a)(1)(A). Defendants characterize Count I as a claim for payment of $350,000 from Norman's Estate; Counts II and III as asserting that defendants breached fiduciary duties as trustee and attorney for Norman's Trust and Ingrid's Trust; and Count IV as asserting that defendants breached fiduciary duties as trustee and attorney for Norman's Estate.[5] Defendants contend that regardless of the outcome of plaintiff's claims, the other beneficiaries/legatees of Norman's Trust and Norman's Estate (Karen Marker and Jared Hjersted) have substantially similar interests in the subject of plaintiff's lawsuit. Defendants argue that they cannot receive complete relief absent these beneficiaries because even if they prevail here, the judgment will not bind Karen Marker and Jared Hjersted, who can assert similar claims as beneficiaries of Norman's Trust and Norman's Estate. See Ayers v. Graff, 109 P.2d 202, Syl. ¶ 2 (Kan. 1941) (in action construing will, legatees' interests necessarily affected).

Plaintiff points out that complete relief refers to relief between the persons who already are parties to the action, not between a present party and an absent party whose joinder is sought. See Champagne v. City of Kansas City, Kan., 157 F.R.D. 66, 67 (D. Kan. 1994) (FLSA action for overtime pay; defendant not entitled to compulsory joinder of other employees because parties could obtain all relief requested without joinder). She asserts that the fact that other beneficiaries could assert similar claims against defendants does not alone make the other beneficiaries necessary parties, citing Augustine v. Adams, No. 95-2489-GTV, 1997 WL 94263, at *1 (D. Kan. Feb. 3, 1997). In Augustine,

5 In their opening memorandum, defendants address only Counts I through IV.

plaintiff brought malpractice claims against the attorneys who drafted and administered her mother's will and trust. The court found that it could grant complete relief without joinder of the other beneficiaries of the will and trust, even though they might have identical claims to plaintiff's. See id. at * 3. In Augustine, however, plaintiff sought damages from defendants and did not seek any recovery from the estate or trust. By contrast, here, plaintiff seeks proceeds from Norman's Estate and Norman's Trust, and any recovery would impact the assets of the Norman's Estate and Norman's Trust.

Defendants next argue that under Rule 19(a)(1)(B)(i), Karen Marker and Jared Hjersted claim an interest relating to the subject of the action and are situated so that disposing of the action in their absence may as a practical matter impair or impede their ability to protect their interest. Defendants contend that because plaintiff claims injury to Ingrid's Trust as a beneficiary of Norman's Estate and Norman's Trust, adjudication of plaintiff's claims will necessarily involve construction of Norman's Estate and Norman's Trust. Defendants argue that the absent beneficiaries and the Estate and Trust are therefore necessary parties to plaintiff's action. See Tick v. Cohen, 787 F.2d 1490, 1494 (11th Cir. 1986) (generally in suits involving trust property, all beneficiaries necessary parties). Plaintiff responds that each of her claims is for individual relief only and does not affect the other beneficiaries of Norman's Trust or Norman's Estate.

Count I alleges breach of a settlement agreement between plaintiff and Lawrence Hjersted, whom Fleming represented. Plaintiff argues that the absent parties do not claim an interest related to the subject matter of the agreement. She claims that in the agreement, Lawrence Hjersted personally guaranteed that she would receive at least $350,000 from Norman's Estate.[6] She asserts that if she does not receive the promised amount from the Estate, Lawrence Hjersted – not the Estate – must make good

[6] Plaintiff argues that the phrase "at least" signifies that Lawrence Hjersted personally guaranteed her that when the estate is finally settled, she will receive at least $350,000.

on his promise.[7] Similarly, plaintiff notes that she seeks damages for Lawrence Hjersted's breach of promise to reimburse $25,000 in legal fees for Ingrid's Trust. Again, she states that this claim is against Lawrence Hjersted individually and not as executor of Norman's Trust or Norman's Estate. The claim, however, is based upon Lawrence Hjersted's performance of his duties as executor of Norman's Estate, which remains open. The Court finds that disposing of this claim in the absence of the other beneficiaries may as a practical matter impair their ability to protect their interest.

Defendants argue that Counts II through IV deal primarily with assets of Norman's Estate and Norman's Trust and that plaintiff seeks relief which requires construction of the corpus of Norman's Trust and Norman's Estate, which affects the interests of the other beneficiaries because plaintiff's action will affect the amount of funds available in the Trust and Estate.[8] See Stevens v. Loomis, 223 F. Supp. 534, 538 (D. Mass. 1963) (where beneficiary sues executor or trustee with regard to estate or trust, all legatees or beneficiaries necessary parties because their interests necessarily affected if corpus of estate

---

[7] Because Norman's Estate has not been settled, it appears that this aspect of Count I may be not be ripe.

[8] Specifically, in Count II, plaintiff claims that defendants breached fiduciary duties with respect to the administration of Ingrid's Trust. Plaintiff claims that Lawrence Hjersted improperly sold assets of Norman's Trust, which affected Ingrid's Trust because it is a beneficiary. In Count III, plaintiff claims that defendants breached fiduciary duties with respect to the administration of Norman's Trust. Plaintiff alleges that Lawrence Hjersted made personal loans to himself from Norman's Trust to protect his personal assets. In Count IV, plaintiff claims that Lawrence Hjersted breached fiduciary duties as executor of Norman's Estate. Plaintiff also alleges that Lawrence Hjersted took the assets of the Estate for his own benefit and used Estate assets to fight tax rulings to preserve his own tax position.

As noted, in their opening memorandum, defendants do not specifically address Counts V, VI or VII. In Count V, plaintiff alleges that Lawrence Hjersted caused the Estate to relinquish ownership of Agro-Iron stock, that he took the value of the company for himself, and that he continued to operate Agro-Iron, where he was President and Chairman of the Board of Directors. She claims that this caused the Estate to lose considerable value. In Count VI, plaintiff sues Lawrence Hjersted for specific performance of his agreement to buy her a house. In Count VII, plaintiff claims that defendants' fraudulent transfer of assets diminished the value of the Estate.

or trust is affected).[9] Plaintiff asserts that none of her claims seeks to divest any funds from Norman's Estate, Norman's Trust or Ingrid's Trust. The Court finds that as to Counts II through IV, the absent parties claim an interest relating to the subject matter of the lawsuit, and the Court therefore must determine whether disposition of this action may as a practical matter impede or impair their ability to protect that interest. See Fed. R. Civ. P. 19(a)(1)(B)(i).

As noted, in Count II, plaintiff seeks damages and an accounting for defendants' breach of duties with respect to the administration of Ingrid's Trust. Plaintiff is the sole beneficiary of Ingrid's Trust, and the relief which she seeks will not impact the interests of the absent parties. In Count III, plaintiff alleges that defendants breached duties with regard to Norman's Trust, including that Norman Hjersted made loans to himself from the Trust and failed to provide regular accountings of Norman's Trust. She also claims that contrary to the terms of Norman's Trust, Lawrence Hjersted failed to distribute $250,000 to Ingrid's Trust before he distributed the remainder of the trust estate to the three beneficiaries of Norman's Trust. As with Count II, plaintiff claims that she seeks relief which would not impact the corpus of Norman's Trust, but only her individual interests. See Seeley, 74 F.2d at 356 (not necessary to join other heirs when plaintiffs suing for relief only with respect to their individual

---

[9] In Rippey v. Denver United States Nat'l Bank, 260 F. Supp. 704 (D. Colo. 1966), the court noted that the modern Rule 19 analysis does not rely upon rigid categories, stating as follows:

> [The Rule 19] general philosophy calls for an effort to retain jurisdiction of the case where the interests of substantial justice require it even though under the old definitions the absent parties might hold a joint interest with the parties before the court and would be thus regarded as indispensable under the old practice.

Id. at 708 (in action against trustee bank for breach of duties, declining to dismiss under Rule 19 because relief sought to benefit all beneficiaries); see Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 117-119) (1968) (determination of whether party must be joined governed by flexible standard under Rule 19, not by using conclusory classifications to describe property rights).

interests). The Court notes, however, that if plaintiff succeeds in obtaining a distribution from Norman's Trust, it will diminish the corpus of the trust. See Tick, 787 F.2d at 1494 (where judgment in favor of one trust beneficiary could adversely affect absent beneficiaries' interests, absent beneficiaries should be joined if feasible). Further, although Count III does not specifically seek an accounting of Norman's Trust, her claim will require an accounting. See id. (where plaintiffs sought accounting of trust, all beneficiaries necessary for just adjudication). In Count IV, plaintiff claims that she seeks damages which she individually suffered from defendants' misconduct in administering the Estate. As a practical matter, this claim puts at issue defendants' handling of the entire Estate as executor and attorney. The Court finds that the absent parties are necessary under the second prong of Rule 19(a).

Under the third prong of Rule 19(a), defendants also argue that Karen Marker, Jared Hjersted, Ingrid's Trust, Norman's Trust and Norman's Estate are required parties who claim an interest in the subject matter of the action and are so situated that their absence will leave an existing party subject to a substantial risk of multiple or inconsistent obligations. Fed. R. Civ. P. 19(a)(1)(B)(ii). Defendants argue that if plaintiff prevails in this action, defendants could face further litigation to determine damages due to the absent parties, in that they will have similar claims against defendants. Plaintiff responds that defendants will not be subject to inconsistent liabilities because defendants will be able to meet their obligation to both plaintiff in this action and the other parties in future proceedings. If plaintiff succeeds in obtaining a distribution from Norman's Trust or Norman's Estate, however, it will diminish the corpus of the Estate and Trust. See Tick, 787 F.3d at 1490. If the other beneficiaries then bring suit, defendants could face inconsistent obligations. The Court finds that the absent parties are necessary under this prong.

II. Feasibility Of Joinder

Because the absent trust beneficiaries, as well as Norman's Trust and Norman's Estate and Ingrid's Trust, are necessary parties, the Court must determine whether joinder is feasible, i.e. whether the absent persons are subject to service of process and whether joinder will deprive the Court of subject matter jurisdiction. Fed. R. Civ. P. 19(a)(1); Citizen Potawatomi Nation, 248 F.3d at 997; Salt Lake Tribune Pub. Co. 320 F.3d 1081, 1097 (10th Cir. 2003). Here, the parties appear to assume that the absent persons are subject to service of process.

The Court must consider whether the citizenship of the parties to be joined would destroy diversity jurisdiction. As noted, plaintiff is a citizen of Massachusetts. Defendant Lawrence Hjersted is a citizen of Florida, and defendant William Fleming is a citizen of Kansas. Karen Marker and Jared Hjersted are both citizens of Florida. Norman's Estate is a citizen of Kansas. See 28 U.S.C. § 1331(c)(2) (estate assumes same state of citizenship as decedent). Norman's Trust is a citizen of Massachusetts (Ingrid Hjersted's state of citizenship) and Florida (Karen Marker and Jared Hjersted's state of citizenship). See San Juan Basin Royalty Trust v. Burlington Res. Oil & Gas Co., LP, 588 F. Supp.2d 1274, 1280 (D. N.M. 2008) (trust takes on citizenship of beneficiaries when suit brought in name of trust).

When considering whether joinder under Rule 19 will destroy subject matter jurisdiction, the Court must align the parties according to the purpose of the suit and the primary and controlling matter in dispute. See Symes v. Harris, 472 F.3d 754, 761 (10th Cir. 2006) (citing City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 69-70 (1941)). Here, the purpose of plaintiff's suit is to recover funds from Norman's Trust and Norman's Estate. The primary matter in dispute is whether defendants have improperly administered the Trust and Estate. Karen Marker and Jared Hjersted, as beneficiaries of Norman's Trust and Norman's Estate, would appear to be properly aligned as plaintiffs. They are both

citizens of Florida, and defendant Lawrence Hjersted is also a citizen of Florida. Thus, joinder of Karen Marker and Jared Hjersted as plaintiffs would divest the Court of subject matter jurisdiction. Jared Hjersted became a beneficiary as a result of his father's declination, and thus could be possibly be properly aligned as a defendant. As for Karen Marker, the record contains no evidence which suggests that she is properly aligned as a defendant. It thus appears that joinder is not feasible.

III. Indispensability Of Parties

Because Jared Hjersted and Karen Marker are required or necessary parties and joinder apparently is not feasible, the Court next addresses whether they are indispensable parties under Rule 19(b). See Rishnell, 94 F.3d at 1412. To conclude that a party is indispensable, the Court must find "in equity and good conscience" that the action should not proceed in the party's absence. Fed. R. Civ. P. 19(b); see Sac & Fox Nation, 240 F.3d at 1259. In making this determination, the Court balances the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
> (A) protective provisions in the judgment;
> (B) shaping the relief; or
> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

A. Potential For Prejudice

Lawrence Hjersted asserts that if he prevails, he can seek reimbursement of attorney fees from Norman's Trust, and depletion of trust money would directly impact Karen Marker and Jared Hjersted

as beneficiaries of Norman's Trust. See K.S.A. § 58a-1004 (court may award attorney fees to any party to be paid by another party or from trust).[10] If the Court determines that the plaintiff's suit is groundless, however, the Court can charge defendants' attorneys' fees against plaintiff's share. See id. Plaintiff argues that the other beneficiaries (the sister and son of Lawrence Hjersted) are unlikely to pursue litigation against him, Plaintiff's Response (Doc. #26) at 16 (citing Austin Fireworks, Inc. v. T.H.E. Ins., Co., 809 F. Supp. 829, 831 (D. Kan. 1992)), and that the Court must look to the practical likelihood – rather than mere possibility – of prejudice due to subsequent litigation if the case is not dismissed. This case arises from disputes between close family members, however, and none of the absent beneficiaries have waived any rights or claims regarding defendants' conduct which is the subject of this lawsuit. The Court concludes that this factor weighs in favor of dismissal.

B. Protective Measures To Lessen Or Avoid Prejudice

Plaintiff suggests that if the Court finds possible prejudice to absent parties, it can protect their interests by setting aside funds. See Plaintiff's Response (Doc. #26) at 15 (citing Atwood v. Rhode Island Hosp. Trust Co., 275 F. 513, 519 (1st Cir. 1921) (district court could direct executor to retain part of estate to protect interests of absent residuary beneficiary)). The Court could impose such measures in this case. This factor weighs against dismissal.

C. Adequacy Of A Judgment In This Action

Plaintiff asserts that she can obtain all relief requested in this action. As defendants point out, however, the adequacy of a judgment relates to the adequacy of the dispute's resolution, rather than

---

[10] Plaintiff notes that Count I seeks $350,000 damages for breach of the settlement contract from Lawrence Hjersted individually and not from Norman's Estate. Similarly, plaintiff notes that she seeks damages for Lawrence Hjersted's breach of the settlement agreement promise to reimburse $25,000 in legal fees for Ingrid's Trust. Again, she states that this claim is against Lawrence Hjersted individually and not as executor of Norman's Trust or Norman's Estate.

plaintiff's interests. See Davis v. United States, 343 F.3d 1282, 1292-93 (10th Cir. 2003) (concern underlying this factor not plaintiff's interest but that of courts and public in complete, consistent efficient settlement of controversies). Here, Karen Marker and Jared Hjersted could bring further litigation concerning defendants' handling of Norman's Trust and Norman's Estate, and that litigation could result in inconsistent determinations with regard to the distribution of assets from Norman's Trust and Norman's Estate. This factor weighs in favor of dismissal.

D. Whether Plaintiff Will Have An Adequate Remedy

Defendants assert that plaintiff has an adequate remedy if the Court dismisses this action. They note that Norman's Estate remains open in state court, and assert that plaintiff can file suit in state court and obtain complete relief along with all necessary and interested parties. In a footnote, plaintiff suggests that defendants may assert defenses in state court including "jurisdiction/venue/time limitations." Plaintiff does not specify any facts, however, which would bar a state court claim.

The Court finds that the plaintiff would have an adequate remedy in state court in Kansas, where Norman's Estate is currently open, and where she may bring all claims against defendants with all beneficiaries and parties interested in Norman's Estate and Norman's Trust. The availability of an adequate remedy is not sufficient by itself to dismiss a case under Rule 19, but when this factor is combined with other factors discussed above, the Court finds that dismissal is appropriate. See Cross Timbers Oil Co. v. Rosel Energy, Inc., 167 F.R.D. 457, 460 (D. Kan. 1996).

**IT IS THEREFORE ORDERED** that Defendants' Joint Motion To Dismiss (Doc. #6) filed February 27, 2009 be and hereby is **SUSTAINED**. The case is **DISMISSED**.

Dated this 14th day of September, 2009 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge