# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| INGRID HJERSTED, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION |
| ) | |
| LAWRENCE HJERSTED and ) | No. 08-2419-KHV |
| WILLIAM FLEMING, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Ingrid Hjersted brings this diversity suit against Lawrence Hjersted and William Fleming. Under Kansas law, plaintiff asserts claims for breach of a settlement agreement, breach of fiduciary duties, breach of contract and fraud. On September 14, 2009, the Court sustained defendants' motion to dismiss. The Court found that plaintiff had failed to join as necessary and indispensable parties the other beneficiaries of the trust and estate to which plaintiff's claims refer, and that joinder of these absent parties would destroy diversity jurisdiction. This matter comes before the Court on Plaintiff's Motion For Reconsideration Or To Alter Or Amend Court's Order Of September 14, 2009 (Doc. #86) filed September 28, 2009. For reasons stated below, the Court sustains plaintiff's motion.

## Legal Standards

The Court has discretion whether to grant or deny a motion to reconsider. Hancock v. City of Okla. City, 857 F.2d 1394, 1395 (10th Cir. 1988). The Court may recognize any one of three grounds justifying reconsideration: an intervening change in controlling law, availability of new evidence or the need to correct clear error or prevent manifest injustice. Major v. Benton, 647 F.2d 110, 112 (10th Cir.1981); Burnett v. W. Res., Inc., 929 F.Supp. 1349, 1360 (D. Kan. 1996) (motion to reconsider appropriate where court obviously misapprehended party's position). A motion to reconsider is not a

second opportunity for the losing party to make its strongest case, to rehash arguments or to dress up arguments that previously failed. Van Skiver v. United States, 952 F.2d 1241, 1243 (10th Cir. 1991).

In deciding whether a person is indispensable under Rule 19(b), the Court applies a three-part analysis. See Citizen Potawatomi Nation v. Norton, 248 F.3d 993, 997 (10th Cir. 2001). First, the Court determines under Rule 19(a) whether the party is a required or necessary party. A party is required if

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). If a person is required, the Court must determine whether joinder is feasible, i.e. whether the person is subject to service of process and whether joinder will deprive the Court of subject matter jurisdiction. Citizen Potawatomi Nation, 248 F.3d at 997. If the party is necessary but cannot be joined, the Court determines under Rule 19(b) whether the party is indispensable. To conclude that a party is indispensable, the Court must find "in equity and good conscience" that the action should not proceed in the party's absence. Fed. R. Civ. P. 19(b); Sac & Fox Nation v. Norton, 240 F.3d 1250, 1259 (10th Cir. 2001).[1]

---

[1] In making this determination, the Court balances the following factors:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(continued...)

## Factual And Procedural Background

The Court previously summarized the relevant facts for purposes of defendants' motion to dismiss, as set out in plaintiff's complaint and the parties' affidavits.

Norman Hjersted had three children: plaintiff, a resident of Massachusetts, and Lawrence Hjersted and Karen Marker, both residents of Florida. On May 18, 2000, Norman Hjersted executed a trust agreement which established a revocable trust ("Norman's Trust"). Norman's Trust provided that it would become irrevocable upon his death. Norman's Trust named as beneficiaries the Ingrid Hjersted Trust ("Ingrid's Trust"), Lawrence Hjersted and Karen Marker. Plaintiff is the sole beneficiary of Ingrid's Trust. Lawrence Hjersted has renounced his interest in Norman's Trust in favor of his son, Jared Hjersted. Jared Hjersted is a citizen of Florida and currently lives in Maryland. Lawrence Hjersted serves as the trustee of Ingrid's Trust and Norman's Trust. Lawrence Hjersted is also the general partner of the Hjersted Family Limited Partnership ("Family Partnership") in which Ingrid's Trust was a partner for a time. In addition, Lawrence Hjersted is president of a business called Agro-Iron.

On April 28, 2001, Norman Hjersted died. On November 19, 2001, the District Court of

---

[1](...continued)
        (A) protective provisions in the judgment;
        (B) shaping the relief; or
        (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). The Court exercises discretion in determining the weight of each factor. Thunder Basin Coal Co. v. Sw. Pub. Serv. Co., 104 F.3d 1205, 1211 (10th Cir. 1997).

Leavenworth County, Kansas admitted his will to probate. Norman's Trust is the beneficiary of Norman Hjersted's residuary estate. Lawrence Hjersted is the executor of Norman Hjersted's estate, which remains open.

William Fleming, a Kansas attorney, drafted Norman's Trust, Norman's Will and the Family Partnership agreement. Fleming has represented Lawrence Hjersted individually and in his capacities as executor of Norman's Estate and trustee of Ingrid's Trust and Norman's Trust. Fleming also serves as attorney for Ingrid's Trust, Norman's Trust and the Family Partnership and has acted as general counsel for Agro-Iron.

After Norman Hjersted died, plaintiff and Lawrence Hjersted began to disagree on Lawrence's handling of Ingrid's Trust, Norman's Trust, the Family Partnership and related matters. In January of 2008, they met with their attorneys and made settlement proposals but did not reach an agreement. After a series of offers and counteroffers, on May 12, 2008, plaintiff's attorney sent Fleming a letter stating that she accepted Lawrence Hjersted's settlement offer to (1) pay her $1,000,000 cash by July 1, 2008; (2) immediately pay $25,000 to Ingrid's Trust as reimbursement for attorneys' fees; (3) by July 1, 2008, provide her a $100,000 loan;[2] (4) guarantee that she would receive at least a $350,000 payment in the final settlement of Norman's Estate and Trust; (5) provide "trust accountings for the year 2007" and (6) assure her that "none of the other beneficiaries to date has received any amounts other than their beneficial shares of the Norman Hjersted Trust (other than loans which will be repaid upon final settlement of the estate)." In exchange, plaintiff would release Lawrence Hjersted from all liability in his individual capacity, as executor of Norman's Estate, as trustee of Norman's Trust and Ingrid's Trust

---

[2] The letter stated that Lawrence Hjersted would loan plaintiff $100,000 by July 1, 2008 with no interest until settlement of Norman's Estate and Norman's Trust and then with interest for five years at the lowest government rate.

and as managing partner of the Family Partnership. See May 12, 2008 Letter, attached as Exhibit C to Complaint (Doc. #1).[3]

As trustee of Norman's Trust, Lawrence Hjersted did not distribute $250,000 to Ingrid's Trust before distributing the remainder of the trust estate as required by the terms of Norman's Trust. Fleming did not monitor Lawrence Hjersted's actions as trustee of Norman's Trust and did not disclose to plaintiff conflicts between his representation of Lawrence Hjersted and his representation of Norman's Trust, Norman's Estate and Ingrid's Trust.

As executor of Norman's Estate, Lawrence Hjersted abandoned the Estate's interest in Agro-Iron stock and transferred the stock to himself. Lawrence Hjersted told plaintiff that Agro-Iron was not profitable even though it had substantial value. He also used assets of Norman's Estate to fight tax rulings to benefit his personal tax position. Fleming did not adequately advise Lawrence Hjersted concerning disposition of the Agro-Iron stock.

On many occasions, Norman Hjersted promised plaintiff that because he had given unspecified business interests to Lawrence Hjersted, Lawrence Hjersted would purchase a house for plaintiff in

---

[3] The letter concluded as follows:

> We would like to get the settlement documents drafted and signed within a week. . . .
> I will provide the first draft of the agreement for your review if you would like me to do so.

Id. In response, Fleming sent plaintiff's counsel an email which stated in relevant part as follows:

> I will pass this on to Lawrence. I am sure everyone looks forward to finally getting these matters resolved. By the way, we have a mediation scheduled with Maryam that is coming up in June. I anticipate that we will invite Ingrid and/or you to attend if you want to. I am not overly optimistic that it will result in any positive progress, but you never can tell.

Fleming email, May 13, 2008, attached as Ex. D to Complaint (Doc. # 1).

Boston. Lawrence Hjersted confirmed this agreement to plaintiff, promised to purchase a house for her and on several occasions agreed to purchase a house for her at prices up to $1,400,000. Each time, however, he gave excuses why he could not do so at that time. In January of 2006, Lawrence Hjersted stated that he would not purchase a house for plaintiff.

During the spring of 2000, on Fleming's advice, Norman Hjersted transferred to Lawrence Hjersted most of his interest in the Family Partnership. At that time, Fleming and Lawrence Hjersted knew that Kemira, an international company with a minority interest in Kemiron, wanted to purchase Kemiron shares from the Family Partnership. In 2003, Lawrence Hjersted distributed to Ingrid's Trust a one-third interest in the Family Partnership, then purchased the shares of Family Partnership held in her Trust. Shortly thereafter, Lawrence Hjersted sold all of the Family Partnership interest in Kemiron stock to Kemira. As result of these transactions, Lawrence Hjersted received $9,800,000 and the beneficiaries of the Estate received considerably less than their share of Norman's Estate.

In Count I, plaintiff alleges that Lawrence Hjersted breached his agreement to (1) give her $1,000,000 in cash, (2) reimburse her $25,000 for legal fees to Ingrid's Trust, (3) loan her $100,000 and (4) guarantee that she would receive at least $350,000 in the final settlement of Norman's Estate in exchange for her release of all claims against him for "all liabilities, individually and in his positions as Executor, Trustee and managing general partner." Plaintiff seeks $1,000,000 in cash, payment of $25,000 to Ingrid's Trust for legal fees, a $100,000 loan and enforcement of Lawrence Hjersted's guarantee that she would receive at least an additional $350,000 in the final settlement of Norman's Estate.

In Count II, plaintiff alleges that Lawrence Hjersted and Fleming breached fiduciary duties and were negligent with regard to Ingrid's Trust. Plaintiff alleges that Lawrence Hjersted breached fiduciary duties with respect to the administration of Ingrid's Trust by selling to Kemira some 3,820 shares of

Kemiron stock – an asset of the Family Partnership and of the Norman Hjersted Trust – to benefit Lawrence Hjersted. She seeks an accounting of Ingrid's Trust and damages in excess of $75,000.

In Count III, plaintiff alleges that Lawrence Hjersted and Fleming breached fiduciary duties regarding Norman's Trust. Plaintiff alleges that Lawrence Hjersted made personal loans to himself from Norman's Trust to protect his personal assets. She further alleges that as trustee of Norman's Trust, he violated a fiduciary duty to distribute $250,000 to Ingrid's Trust before he distributed the proceeds of Norman's Trust to the three beneficiaries and that he failed to provide regular accountings regarding Norman's Trust. She also alleges that Fleming as the attorney for Norman's Trust failed to monitor Lawrence Hjersted's actions. She seeks an accounting of Ingrid's Trust and damages in excess of $75,000.

In Count IV, plaintiff alleges that Lawrence Hjersted as Executor of Norman's Estate and Fleming as attorney for the Estate breached fiduciary duties and were negligent with regard to the Estate. Specifically, plaintiff alleges that Lawrence Hjersted abandoned Agro-Iron stock, an asset of the Estate, and used the asset for his own benefit rather than preserving the value of the asset for the Estate. Plaintiff further alleges that Lawrence Hjersted used Estate assets to fight tax rulings which primarily benefitted his own tax position. She claims that as a beneficiary of the Estate, she has suffered more than $75,000 in damages.

In Count V, plaintiff alleges that Lawrence Hjersted breached fiduciary duties to Norman's Trust and Norman's Estate when he caused the Estate to relinquish ownership of valuable Agro-Iron stock and took the value of the company for himself. She asks the Court to order Lawrence Hjersted to return one-third of the value of Agro-Iron to Ingrid's Trust, which she alleges exceeds $75,000.

In Count VI, plaintiff alleges that Lawrence Hjersted breached his agreement with his father and his promise to her to buy her a house. She seeks $1,400,000 in damages.

In Count VII, plaintiff alleges that Lawrence Hjersted fraudulently caused Norman Hjersted to transfer assets to the detriment of Norman's Estate and Norman's Trust. Plaintiff claims that Lawrence Hjersted caused Norman Hjersted to allow Fleming to revise his estate planning documents. She alleges that Lawrence Hjersted engaged in self-dealing with regard to Norman's Estate, the Family Partnership, Midland and Kemira. She claims that as a result, the beneficiaries of Norman's Trust and Norman's Estate have received less than their pro rata share of the estate. She seeks damages in excess of $75,000.

Defendants moved to dismiss all claims because plaintiff did not join as parties Ingrid's Trust, Norman's Trust, Norman's Estate and the other beneficiaries and legatees of Norman's Trust and Norman's Estate (Karen Marker and Jared Hjersted). The Court sustained the motion, finding that the absentees were indispensable parties and that joinder would destroy diversity jurisdiction.

## **Analysis**

Plaintiff asserts that the Court clearly erred and committed manifest injustice in dismissing her claims. She contends that the Court found that the absent parties were necessary under each prong of Rule 19(a) because it misconstrued her claims in Counts I through IV.

The Court characterized Count I as a claim for payment of $350,000 from Norman's Estate; Counts II and III as asserting that defendants breached fiduciary duties as trustee and attorney for Norman's Trust and Ingrid's Trust; and Count IV as asserting that defendants breached fiduciary duties as trustee and attorney for Norman's Estate. The Court found that regardless of the outcome of plaintiff's claims, the other beneficiaries/legatees (Karen Marker and Jared Hjersted) have substantially similar interests in the subject of plaintiff's lawsuit, and that defendants could not receive complete relief absent these beneficiaries because the judgment would not bind Karen Marker and Jared Hjersted, who could assert similar claims as beneficiaries of Norman's Trust and Norman's Estate. See Ayers v. Graff, 109 P.2d 202, Syl. ¶ 2 (Kan. 1941) (in action construing will, legatees' interests necessarily

affected).

The Court acknowledged plaintiff's reliance on Augustine v. Adams, No. 95-2489-GTV, 1997 WL 94263, at *1 (D. Kan. Feb. 3, 1997), for the proposition that the fact that other beneficiaries could assert similar claims against defendants does not alone make the other beneficiaries necessary parties. See id. at *3 (plaintiff brought malpractice claims against the attorneys who drafted and administered mother's will and trust; court could grant complete relief without joinder of other beneficiaries even though they might have identical claims to plaintiff's). The Court distinguished Augustine, however, stating that there, plaintiff sought damages from defendants and did not seek any recovery from the estate or trust, whereas here, "plaintiff seeks proceeds from Norman's Estate and Norman's Trust," and therefore, "any recovery would impact the assets of the Norman's Estate and Norman's Trust." Further, the Court found that as set forth in the complaint, plaintiff's claims in Counts I through IV require an accounting of Norman's Trust and Estate. Thus, under a plain reading of the complaint, the Court found the absent parties necessary.[4]

In support of her motion to reconsider, plaintiff states that the "principal relief" which she seeks is damages. See Motion And Supporting Memorandum (Doc. #86) at 4, 8. In her reply, however, plaintiff unequivocally asserts that she is "solely seeking damages from the individual Defendants." See Reply (Doc. #88) at 4 (emphasis in original). If plaintiff indeed seeks only damages from the individual defendants, as opposed to an accounting and distributions from Norman's Trusts and/or Estate, the

---

[4] As to Counts II through IV, plaintiff also argues that even if the absent parties are necessary, they are not indispensable under Rule 19(b) because they have received benefits from Lawrence Hjersted's business dealings. As noted, however, in her reply, plaintiff asserts that she seeks only damages from the individual defendants. Because plaintiff has abandoned any claims against the trusts or estate or against defendants in their representative capacities, the absent parties are not necessary. Therefore the Court need not address whether the absent parties are indispensable.

-9-

absent parties are not necessary because the Court can accord complete relief among existing parties and the absent parties do not claim an interest in the subject matter of the action. To the extent that plaintiff seeks an accounting of Norman's Trust or Norman's Estate, however, or to recover assets from Norman's Trust or Estate, the Court finds that she has abandoned any such claims.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Reconsideration Or To Alter Or Amend Court's Order Of September 14, 2009 (Doc. #86) filed September 28, 2009 be and hereby is **SUSTAINED**.

**IT IS FURTHER ORDERED** that plaintiff has abandoned any claims for an accounting of Norman's Trust or Norman's Estate, or to recover assets from Norman's Trust or Estate.

**IT IS FURTHER ORDERED** that the magistrate judge set forth an expedited pretrial schedule.

Dated this 11th day of January, 2010 at Kansas City, Kansas.

s/ Kathryn H. Vratil
Judge Kathryn H. Vratil
United States District Judge
