# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| INGRID HJERSTED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | |
| LAWRENCE HJERSTED and ) | No. 08-2419-KHV |
| WILLIAM FLEMING, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM AND ORDER

Ingrid Hjersted brings this diversity suit against Lawrence Hjersted and William Fleming. Under Kansas law, plaintiff asserts claims for breach of a settlement agreement, breach of fiduciary duties, breach of contract and fraud. This matter comes before the Court on Defendant Lawrence Hjersted's Motion For Partial Judgment On The Pleadings (Doc. #99) filed April 12, 2010, Plaintiff's Motion For Leave To File Surreply Or Alternatively Plaintiff's Request For A Hearing (Doc. #106) filed June 7, 2010 and Defendant Lawrence Hjersted's Motion For Leave To File Defendant Hjersted's Response To Plaintiff's Surreply, If Allowed By Court (Doc. #108) filed June 9, 2010. For reasons set forth below, the Court overrules the motions.

## Legal Standards

A motion for judgment on the pleadings under Rule 12(c), Fed. R. Civ. P., is governed by the same standards as a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P.[1] See Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1160 (10th Cir. 2000); Mock v. T.G. & Y. Stores Co., 971 F.2d 522, 528 (10th Cir. 1992). In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether

---

[1] Fed. R. Civ. P. 12(c) states in relevant part as follows: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."

they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 129 S. Ct. at 1950. The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff bears the burden to frame the complaint with enough factual matter to suggest that she is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by mere conclusory statements. Twombly, 550 U.S. at 556.

Plaintiff makes a facially plausible claim when she pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Iqbal, 129 S. Ct. at 1949. Plaintiff must show more than a sheer possibility that defendants have acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 1950. Finally, the degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2) depends upon the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 232-32 (3d Cir. 2008)).

**Facts**

Plaintiff's complaint, as supplemented by the documents attached as exhibits to the complaint, alleges the following facts which the Court accepts as true for purposes of this motion:

Norman Hjersted, now deceased, was the father of plaintiff Ingrid Hjersted, defendant Lawrence Hjersted and Karen Marker. On May 18, 2000, Norman Hjersted established a revocable trust ("Norman's Trust"), which provided that it would become irrevocable upon his death. Norman's Trust named as beneficiaries the Ingrid Hjersted Trust ("Ingrid's Trust"), Lawrence Hjersted and Karen Marker. Plaintiff is the sole beneficiary of Ingrid's Trust. Lawrence Hjersted serves as the trustee of Ingrid's Trust and Norman's Trust. Lawrence Hjersted is also the general partner of the Hjersted Family Limited Partnership ("Family Partnership") in which Ingrid's Trust was a partner for a time. In addition, Lawrence Hjersted is president of a business called Agro-Iron.

On April 28, 2001, Norman Hjersted died. On November 19, 2001, the District Court of Leavenworth County, Kansas admitted his will to probate. Norman's Trust is the beneficiary of Norman Hjersted's residuary estate. Lawrence Hjersted is the executor of Norman Hjersted's estate, which remains open.

William Fleming, a Kansas attorney, drafted Norman's Trust, Norman's Will and the Family Partnership agreement. Fleming has represented Lawrence Hjersted individually and in his capacities as executor of Norman's Estate and trustee of Ingrid's Trust and Norman's Trust. Fleming also serves as attorney for Ingrid's Trust, Norman's Trust and the Family Partnership, and has acted as general counsel for Agro-Iron.

After Norman Hjersted died, plaintiff and Lawrence Hjersted began to disagree on Lawrence's handling of Ingrid's Trust, Norman's Trust, the Family Partnership and related matters. In January of 2008, they met with their attorneys and made settlement proposals but did not reach an agreement.

After various negotiations, by March 6, 2008, Lawrence Hjersted offered to (1) pay plaintiff $1 million in cash by May 1, 2008; (2) guarantee that plaintiff would receive at least $350,000 upon settlement of the estate and trusts and (3) lend plaintiff $100,000 at the lowest government interest rates in exchange for a release of her claims against him, individually and in his positions as Executor, Trustee and managing general partner. On March 6, 2008, plaintiff's attorney proposed that in addition to the three terms listed above, Lawrence Hjersted pay $35,000 in trust expenses and pay plaintiff's expenses to earn a four-year college degree and possibly a graduate degree.[2]

---

[2] Plaintiff attached to the complaint a letter written on March 6, 2008 from her attorney to William Fleming, as Lawrence Hjersted's attorney, which states as follows:

> This letter is written to further explore possible settlement of this matter. From our discussions, I understand your last offer is for settlement of all of Ms. Hjersted's claims at this time against Lawrence Hjersted in his various capacities was [sic] 1) payment to Ms. Hjersted of $1,000,000 cash on May 1, 2008, which she would receive tax free; 2) guarantee to Ms. Hjersted that she would receive at least $350,000 from the estate at the close of the estate and the termination of the Norman Hjersted Trust and 3) a loan of $100,000 to Ms. Hjersted by Lawrence Hjersted (at the minimum interest and at the maximum length of due date allowed by IRS).
>
> Ms. Hjersted has several concerns regarding the acceptance of the settlement offer which we would like to address. First, Ms. Hjersted is still much concerned about her ability to purchase a home in the Boson [sic] area and to be able to maintain that property and pay its taxes once purchased. In the Restated Trust Amendment it is stated that Ms. Hjersted is to live in a "house" and "not pay rent" (her house rental costs in the last seven years have been $133,000). Attorney Vold's notes state Norman's desire for Ingrid to have a "house of her own." There are numerous examples in letters and emails of both Norman and Lawrence identifying that it was Norman and Lawrence's intention to provide a suitable residence for Ms. Hjersted. Housing prices, though, in the desirable areas of Boston have continued to remain very high and have even increased in this last year (see letter from Boston residential broker).
>
> Ms. Hjersted's second concern is that she would like to further her education, and at least obtain a college degree and possibly a graduate degree, to be able to earn supplemental income (without a college degree she is very much limited in what kind of job she can get). College and graduate school tuition alone (not counting

(continued...)

On May 6, 2008, defendant Fleming, attorney for Lawrence Hjersted, responded to plaintiff's offer with a counteroffer which included the "previously agreed to terms of the March 6, 2008 offer," except that he would pay only $25,000 of the legal expenses and would not make payment until July

---

²(...continued)
expenses) in the Boston area may cost more than $35,000 per year. To be able to complete her education in the next four to six years would be very difficult without some assistance. We had previously suggested a college tuition and expenses trust, which was rejected, but there may be other possible solutions to this.

Third, Ms. Hjersted is concerned with charges which have been taken against her trust, and her portion of the family trust, which she does not believe should be charged against those trusts. For example, legal fees have been assessed against those trusts which were, we believe, paid for matters which benefitted Lawrence and his individual interests and should not have been assessed against Ingrid's interests.

Ms. Hjersted is further concerned that she is attempting to settle this matter at far too low a figure. We still believe we have a very strong case. The information which we received on Agro-Iron confirms information which we had that the company was valuable and continues to be valuable and that it should not have been abandoned by the estate. We have gained additional information which we believe will prove that Midland was considerably more valuable to the merger with Kemiron than anyone, including Norman, knew, and that Lawrence, who was in a fiduciary position for several parties, knew of Midland's additional value but did not disclose that important information to the persons who should have received such information. I won't argue the case here, but we believe that there is a discernable pattern of breach of fiduciary duties which will support Ingrid's claim.

At any rate, our settlement counter offer is in addition to your offer as we have stated it above. We request that Lawrence pay to Ingrid up to $45,000 per year for four (4) to six (6) years to allow her to complete her education and we also ask that attorney's fees amounts which were charged against Ingrid's trust be returned to the trust and that Ingrid's portion of the attorney's fees charged against the family trust which dealt with Lawrence's individual issues, be returned to Ingrid. The above additions are a small amount of difference for Lawrence, but are significant to Ingrid and will get this matter resolved. Finally, we request that the one million dollar payment be made at the signing of the settlement agreement and that the settlement agreement will be completed by March 24, 2008. We will appreciate your careful consideration.

See Letter of March 6, 2008, attached as Exhibit A to Complaint (Doc. #1).

1, 2008.[3]

---

[3]     Plaintiff attached to the complaint an email which Fleming sent to her attorney on May 6, 2008, as follows:

> Doug - I have now heard back from Lawrence regarding Ingrid's latest request. Lawrence's financial position has changed dramatically since we first began these discussions. Recently, this has necessitated that Lawrence take out a mortgage on his Florida farm and also on his Florida Beach House.
>
> He is attempting to start a new water treatment business. He has a large number of people on his payroll and some large capital projects, but none of his present businesses are generating any income because they have not commenced business operations yet. Any settlement will have to take into consideration a reasonable time period for Lawrence to secure the liquidity to pay off the settlement. As such, Lawrence will not consider any additional payments to Ingrid over what he has already offered. In summary, Lawrence is willing to pay Ingrid a $1.0 million settlement plus pay for $25k of her trust legal expenses.
>
> In the meantime, based on my analysis, and his, we both believe that the current settlement offer to Ingrid is generous and fair. Based on Lawrence's efforts to defend Ingrid's inheritance from Maryam's attack, Ingrid should realize much more from Norman's estate that what she could have gotten if Lawrence had not gotten involved. I feel that Ingrid does not appreciate that fact. In my opinion, if Lawrence would not have gotten involved with Norman's estate planning prior to his death, Ingrid would have likely received nothing at all, except what she could have begged Maryam to give her. In light of all the facts as I understand them, the offer that has been made and that is on the table is more than fair and this matter should be resolved once and for all. We believe we have been flexible and have worked very hard to be amenable to the increasing number of demands made by Ingrid. We have to draw the line somewhere.
>
> If Ingrid decides not to accept this offer, I must warn you that you should not expect any additional settlement offers later in the litigation. I have learned in my dealings with Lawrence that he plays to win, and I do not expect him to take lightly some of the allegations you have raised, most of which are absolutely false and untrue. I think his resolve is amply demonstrated in the present litigation with Maryam, that is now going on six years or so. In the short run, you can make his life more complicated, but in the long run this will only serve to severely damage this family relationship, and in my opinion will not achieve the result that Ingrid desires.

See Email of May 6, 2008, attached as Exhibit B to Complaint (Doc. #1).

On May 12, 2008, plaintiff accepted defendant's counteroffer in a letter which her attorney sent to Fleming. The letter stated as follows:

> This letter is to inform you that my client, Ingrid Hjersted, has accepted Lawrence Hjersted's offer of settlement of her claims against him. Lawrence Hjersted's offer, which [sic] includes the following tax free payments:
>
> A lump sum One Million Dollar ($1,000,000.00) payment in cash to Ms. Hjersted, no later than July 1, 2008;
>
> An immediate Twenty Five Thousand Dollar ($25,000.00) payment to her trust for reimbursement of attorneys' fees paid out of trust;
>
> A One Hundred Thousand Dollar ($100,000.00) non-interest loan to Ms. Hjersted paid on or before July 1, 2008 and due upon final settlement of the estate of Norman Hjersted and resolution of the Norman Hjersted Trust issues with interest thereafter to be paid yearly for five years accruing at lowest government interest rates; and
>
> A guarantee by Lawrence Hjersted that Ingrid Hjersted will receive at least an additional $350,000.00 payment in the final settlement of the estate. (If Ms. Hjersted's portion of the final settlement and distribution of the Estate and Trust assets exceeds $350,000.00 she will, of course, receive that amount.)
>
> Ms. Hjersted has made such agreement based on the assurance that she would receive the trust accountings for the year 2007 (which she has not yet received) and on the assurance that none of the other beneficiaries to date has received any amounts other than their beneficial shares of the Norman Hjersted Trust (other than loans which will be repaid upon final settlement of the estate).
>
> We would like to get the settlement documents drafted and signed within a week. We will likely need to extend the Tolling Agreement another week. I will provide the first draft of the agreement for your review if you would like me to do so.
>
> Please call if you have any questions.

See Letter of May 12, 2008, attached as Exhibit C to Complaint (Doc. #1).

In response, on May 13, 2008, Fleming sent plaintiff's attorney an email which stated as follows:

Thanks, Doug. I will pass this on to Lawrence. I am sure everyone looks forward to

-7-

finally getting these matters resolved. By the way, we have a mediation scheduled with Maryam that is coming up in June. I anticipate that we will invite Ingrid and/or you to attend if you want to. I am not overly optimistic that it will result in any positive progress, but you never can tell.

See Email of May 13, 2008, attached as Exhibit D to Complaint (Doc. # 1). Plaintiff asserts that in response to the letter of May 12, 2008, Lawrence Hjersted's attorney did not deny that her attorney's letter of May 12 was an acceptance of the offer which Lawrence Hjersted had made, and did not state that the terms of the agreement had changed.

On May 29, 2008, however, Fleming sent plaintiff's attorney the following email:

Doug - I apologize for the delay but it has taken me a little while to coordinate the response to your settlement offer with Lawrence. I have been in meetings. The issues that are still open for discussion are the timing of when the settlement payment is going to be made. Lawrence's current finances do not allow making the $1.0 million settlement payment until such time as he has sold his Timberlakes Apartment complex located in KC. It was recently put on the market (it has been listed with a broker and I would guess that assuming a buyer is located, that closing would be towards the end of this year or beginning of next year, but that is just my best guess as to timing). There are also some other minor issues that need to be considered. As we have discussed in the past, we need some clarification regarding the Hjersted Farm Family General Partnership. We are justing [sic] asking for some acknowledgement [sic] by Ingrid that a majority of the general partners can approve a sale, which is what we believe the agreement now provides anyway. You and Ingrid need to designate a successor trustee for the trust, and we need to discuss making sure that the settlement agreement provides that Ingrid will waive claims against the successor trustee if the successor trustee does not pursue any claims against Lawrence (we are not aware of any of course but we do not want to jump out of the fire into the frying pan and have a successor trustee pursuing claims against Lawrence based on theories that you were pursuing[)]. Finally, unfortunately, Lawrence has indicated that he will be too cash strapped to provide Ingrid a loan (Lawrence is not very excited to be forced to borrow money to loan money to Ingrid). This is not personal nor is it a negotiating ploy. We do recognize it was offered up to you in the past, but things have changed dramatically over the last few months with Lawrence's financial position with the launch of his new company. When Lawrence can get a positive cash flow established from this new company, then Lawrence is willing to revisit the loan to Ingrid. In my opinion, normalization of Lawrence and Ingrid's relationship has far more greater financial upside than a $100,000 loan.

Other than that, he is in general agreement with what you have outlined in your letter.

See Email of May 29, 2008, attached as Ex. E to Complaint (Doc. #1).

On September 9, 2008, plaintiff filed this diversity lawsuit, asserting, inter alia, that Lawrence Hjersted breached a written and implied settlement agreement to (1) give her $1,000,000 in cash, (2) reimburse her $25,000 for legal fees to Ingrid's Trust, (3) loan her $100,000 and (4) guarantee that she would receive at least $350,000 in the final settlement of Norman's Estate in exchange for her release of all claims against him for all liabilities, individually and in his positions as Executor, Trustee and managing general partner. See Complaint (Doc. #1), Count I.

Lawrence Hjersted asserts that he is entitled to judgment on the pleadings on plaintiff's claim that he breached a settlement agreement. Specifically, he argues that the complaint and the exhibits attached to the complaint demonstrate that, as a matter of law, he and plaintiff did not enter an enforceable written or implied settlement agreement.

## **Analysis**

As a preliminary matter, the Court must determine what state law to apply in this case. In diversity actions, the Court applies the substantive law, including choice of law rules, of the forum state. See Moore v. Subaru of Am., 891 F.2d 1445, 1448 (10th Cir. 1989). Under Kansas choice of law rules, "[t]he law of the forum applies unless it is expressly shown that a different law governs, and in case of doubt, the law of the forum is preferred." Phil. Am. Life Ins. v. Raytheon Aircraft Co., 252 F. Supp. 2d 1138, 1142 (D. Kan. 2003). Both sides cite Kansas law in their legal arguments, and the Court therefore applies Kansas law.

Under Kansas law, the essential elements of a breach of contract claim include: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) damages to plaintiff because of the breach. JP Morgan Trust Co. Nat'l Ass'n v. Mid-Am. Pipeline Co., 413 F. Supp.2d 1244, 1272 (D. Kan. 2006) (citing Pattern Instructions Kansas

3d, Civil § 124.01-A; Commercial Credit Corp. v. Harris, 212 Kan. 310, 313, 510 P.2d 1322, 1325 (1973)).

To form a binding contract, the parties must have a meeting of the minds on all essential terms. Albers v. Nelson, 248 Kan. 575, 580, 809 P.2d 1194, 1198 (1991); see Sidwell Oil & Gas Co., Inc. v. Loyd, 230 Kan. 77, 79, 630 P.2d 1107, 1110 (1981). "To constitute a meeting of the minds there must be a fair understanding between the parties which normally accompanies mutual consent and the evidence must show with reasonable definiteness that the minds of the parties met upon the same matter and agreed upon the terms of the contract." Steele v. Harrison, 220 Kan. 422, 428, 552 P.2d 957, 962 (1976). Further, a communicated offer creates a power to accept the offer that is made, and only that offer. Id. Any expression of assent that changes the terms of the offer in any material respect may be operative as a counteroffer, but it is not an acceptance and constitutes no contract. Id. Unless the original offeror subsequently expresses unconditional assent to the counteroffer a contract will not be formed. Id.

Defendant argues that plaintiff's complaint and exhibits do not contain factual allegations which, if true, show that she has a plausible claim for relief. Specifically, defendant asserts that plaintiff has not alleged facts to establish a settlement agreement. Defendant argues that plaintiff has merely alleged a series of offers and counteroffers. He argues that plaintiff's letter of May 12 did not accept Fleming's counteroffer of May 6, because plaintiff's letter differed from the counteroffer in several respects. Defendant points out that Fleming's counteroffer included only two payments – a $1,000,000 cash payment to plaintiff and a $25,000 payment to plaintiff's trust – while plaintiff's response on May 12 also required a $100,000 loan and $350,000 in final settlement of Norman's Estate. Defendant thus argues that plaintiff's letter of May 12 is actually a counteroffer rather than an acceptance. He further argues that his response of May 13, which states simply that he "will pass this on to Lawrence," does

-10-

not constitute an acceptance of plaintiff's counteroffer.

Plaintiff responds that she has not alleged that Fleming's e-mail of May 6 "is the complete embodiment" of the counteroffer, or that the exhibits to the complaint "are the complete embodiment of settlement communications between the parties." She points out that for purposes of a motion for judgment on the pleadings, she need not produce any evidence. Rather, the question is whether she has plead facts sufficient to state a plausible claim. Plaintiff asserts that defendant ignores the allegations of her complaint and focuses only on the exhibits thereto, as if they are the only evidence that could prove her claim. Plaintiff asserts that other evidence, such as additional communications between the parties, can explain ambiguities and inconsistencies in the exhibits.

The Court has carefully reviewed the complaint, the exhibits and the parties' briefs. Although defendant's argument is not unreasonable, he has not shown that plaintiff cannot succeed on her contract claim. Whether the parties entered a binding contract depends on the intention of the parties and is ordinarily a question of fact. Sidwell Oil, 230 Kan. at 83, 630 P.2d at 1112; Phillips & Easton Supply Co. v. Eleanor Int'l, Inc., 212 Kan. 730, Syl. ¶ 3, 512 P.2d 379 (1973); see Augusta Bank & Trust v. Broomfield, 231 Kan. 52, 60, 643 P.2d 100, 107 (1982) (where conflicting evidence of existence of contract is offered, question presented for trier of fact). The Court finds that the complaint contains sufficient factual matter to state a claim which is plausible, and defendant therefore is not entitled to judgment on the pleadings.[4]

---

[4] In her motion for leave to file a surreply, plaintiff asserts that defendant's reply brief relies heavily on Twombly and related cases which deal with pleading requirements and motions to dismiss. Plaintiff states that "[d]iscussion of these issues was lacking in Defendant Hjersted's original motion," see Doc. #106 at 2, and asks to file a surreply to address Twombly and pleading requirements. The Court notes that defendant's opening brief addressed the proper standard for pleading requirements. Defendant's reply does not raise new issues or evidence which would permit the filing of a surreply. The Court therefore overrules the motions to file a surreply and a response
(continued...)

**IT IS THEREFORE ORDERED** that Defendant's Lawrence Hjersted's Motion For Partial Judgment On The Pleadings (Doc. #99) filed April 12, 2010, Plaintiff's Motion For Leave To File Surreply Or Alternatively Plaintiff's Request For A Hearing (Doc. #106) filed June 7, 2010 and Defendant Lawrence Hjersted's Motion For Leave To File Defendant Hjersted's Response To Plaintiff's Surreply, If Allowed By Court (Doc. #108) filed June 9, 2010 be and hereby are **OVERRULED**.

Dated this 13th day of September, 2010 at Kansas City, Kansas

                                   s/ Kathryn H. Vratil
                                   Judge Kathryn H. Vratil
                                   United States District Judge

---

[4](...continued)
to any surreply. See Humphries v. Williams Natural Gas Co., No. 96-4196-SAC, 1998 WL 982903, at *1 (D. Kan. Sept. 23, 1998) (surreplies typically not allowed); see also Metzger v. City of Leawood, 144 F. Supp. 2d 1225, 1266 (D. Kan. 2001) (surreplies permitted in rare cases, but not without leave of court).